UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES PATTERSON, | ) |
|     Plaintiff, | ) |
| v. | )    Case No. 25-CV-0301-CVE-JFJ |
| DON THORNTON CADILLAC INC., | ) |
|     Defendant. | ) |

**OPINION AND ORDER**

Now before the Court is defendant's motion to compel arbitration and to stay proceedings (Dkt. # 18). Defendant Don Thornton Cadillac Inc. (DTC) argues that plaintiff James Patterson's claims fall within the scope of an arbitration agreement executed by the parties, and it asks the Court to compel arbitration and stay this case pending the outcome of the arbitration proceedings. Plaintiff responds that the dispute should not be submitted to arbitration, because DTC failed to disclose that the parties' contract included an arbitration provision and that he was not given an opportunity to read the contract when it was executed. Dkt. # 23, at 2. In the alternative, plaintiff argues that any agreement to arbitrate is voidable because there was fraud in the inducement of the arbitration clause. Id. at 9.

**I.**

Plaintiff alleges that he purchased a 2025 Cadillac Escalade from DTC that was listed for $163,790. Dkt. # 2-1, at 2. He claims that DTC marked up the price by more than $25,000 after creating the false impression that the vehicle would be sold at manufacturer's suggested retail price (MSRP) of $163,790. Id. at 2, 5. Plaintiff filed this case on June 16, 2025, asserting violations of the

Truth in Lending Act (TILA), the Oklahoma Consumer Credit Code (OCCC), and the Oklahoma Consumer Protection Act (OCPA), as well as fraud, deceit, and breach of contract. Id. at 7.

On April 5, 2025, plaintiff and DTC executed a retail installment sale contract (RISC) and motor vehicle retail sales order (MVRSO). Id. at 3. The arbitration provision in the RISC states that:

> Any claim or dispute, whether in contract, tort, statute, or otherwise (including the interpretation and scope of this Arbitration Provision, any allegation of waiver of rights under this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors, or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this contract or any resulting transaction or relationship . . . shall, at your or our election, be resolved by neutral, binding arbitration and not by court action.

Dkt. # 2-1, at 16. The arbitration agreement in the MVRSO further provides that "[t]he parties also shall submit to arbitration all disputes concerning the validity, enforceability, scope, interpretation, and application of this agreement." Id. at 11.

As to the transaction on April 5, 2025, plaintiff alleges that a DTC employee produced electronic copies of the MVRSO and RISC on a tablet, and that plaintiff provided an initial signature and initials for use in signing documents. Id. at 3. Plaintiff alleges that, after providing the initial signature and initials, plaintiff "did not actually tap the tablet or otherwise insert his signature or initials at any place in the documents." Id. Specifically, plaintiff alleges that he did not indicate his agreement to the dispute resolution clause and "was not made aware that such a clause was one of the items [the DTC employee] was agreeing to on his behalf." Id. According to plaintiff, the DTC employee did not permit him to read or skim the documents, and plaintiff did not receive hard copies of the documents until the conclusion of the approximately ten-minute signing process. Id. However, plaintiff alleges that he was handed an envelope with copies of all of the documents as he left the office. Id.

## II.

Defendant has filed a motion asking the Court to compel the parties to arbitrate plaintiff's claims and stay the case pending the completion of arbitration. Dkt. # 18. The Federal Arbitration Act (FAA) represents a strong public policy in favor of arbitration, and states that a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2; Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 682 (2010); Vaden v. Discover Bank, 556 U.S. 49, 58 (2009). The FAA "requires a district court to stay judicial proceedings where a written agreement provides for the arbitration of the dispute that is the subject of the litigation." Coors Brewing Co. v. Molson Breweries, 51 F.3d 1511, 1514 (10th Cir. 1995). Agreements that require arbitration of statutory claims are generally enforceable. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991). However, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Jacks v. CMH Homes, Inc., 856 F.3d 1301, 1305 (10th Cir. 2017). "Generally, courts 'should apply ordinary state-law principles that govern the formation of contracts' to determine whether a party has agreed to arbitrate a dispute." Hardin v. First Cash Fin. Servs., Inc., 465 F.3d 470, 475-76 (10th Cir. 2006). However, the consideration of state law is limited to principles of contract law concerning the enforceability of contracts in general, and state law cannot displace the strong federal policy in favor of arbitration of disputes. Nitro-Lift Technologies, LLC v. Howard, 568 U.S. 17, 20-21 (2012); Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630 (2009).

A motion to compel arbitration calls for a two-step inquiry concerning the arbitrability of the dispute: (1) whether there is a valid arbitration agreement, and (2) whether the particular dispute falls within the scope of that agreement. AT & T Techs., Inc. v. Commc'ns Workers of America, 475 U.S. 643, 649 (1986). "The question whether the parties have submitted a particular dispute to arbitration . . . is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (quoting AT & T, 475 U.S. at 649).

The Tenth Circuit has stated that the procedure for reviewing a motion to compel arbitration when there are no material disputes of fact "can look a lot like summary judgment." Howard v. Ferrellgas Partners, L.P., 748 F.3d 975, 978 (10th Cir. 2014). "When it's apparent from a quick look at the case that no material disputes of fact exist it may be permissible and efficient for a district court to decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration." Id.

### III.

Plaintiff contends that no agreement to arbitrate was formed, because he neither read the arbitration agreement nor inserted his electronic signature. Dkt # 23, at 6. According to plaintiff, without reading and signing the agreement, he could not have intended to consent or communicate consent to its terms. Id. Defendant responds that plaintiff's argument would render invalid the entire agreement for the purchase of the vehicle, not simply the arbitration provision. Dkt. # 26, at 1. Plaintiff has not sought a rescission remedy and has kept his vehicle; defendant argues that plaintiff's action are inconsistent with his allegation that a contract was never formed between the parties. Id. at 2.

4

Under Oklahoma law, a valid, legally enforceable contract requires: (1) parties capable of contracting; (2) mutual consent, i.e., a meeting of the minds; (3) a lawful object; and (4) sufficient consideration. OKLA. STAT. tit. 15, §§ 2, 51. Relevant to this case, Oklahoma law provides that "[p]erformance of the conditions of a proposal, or the acceptance of the consideration offered with a proposal, is an acceptance of the proposal." Id. § 70. Further, "[a] voluntary acceptance of the benefit of a transaction is equivalent to a consent to all obligations arising from it so far as the facts are known, or ought to be known to the person accepting." Id. § 75. Applying Oklahoma contract law, Oklahoma federal courts have held that "acceptance of an arbitration agreement may be shown by acts, conduct, or acquiescence to the terms of the contract." Wohlford v. Am. Auto Shield, LLC, 2023 WL 1107891, *5 (W.D. Okla. Jan. 30, 2023) (quotation omitted) (holding that plaintiff who did not physically sign the vehicle sales contract (VSC) accepted the terms of the VSC, including its arbitration provision, by making payments under the VSC and not cancelling the VSC upon receiving a copy of the agreement at some point after purchase); Hall v. Armis, LLC, 2025 WL 719773, *5 (N.D. Okla. Mar. 6, 2025) (plaintiff could not avoid arbitration provision of contract after accepting benefits of the parties' agreement and affirmatively showing acceptance of the agreement by his conduct); Boles v. Carshield, LLC, 2023 WL 8851626, *6 (N.D. Okla. Dec. 21, 2023) (plaintiff asserting breach of contract claims and seeking benefits of the parties' agreement cannot avoid arbitration provision based on argument that no contract was formed between parties).

Plaintiff has failed to create any genuine disputes of material fact regarding the existence of an arbitration agreement. Plaintiff's arguments focus on the parties' conduct prior to plaintiff's purchase of the vehicle. Specifically, plaintiff contends that (1) the DTC employee failed to inform plaintiff of the arbitration provision or waiver of jury trial rights; (2) plaintiff did not insert his

5

signature or initials at any place in the documents; (3) plaintiff did not authorize the DTC employee to sign as his agent; (4) plaintiff did not see or review the documents before making the purchase; and (5) at the conclusion of the contracting process, plaintiff was provided with copies of the documents. Dkt. # 2-1, at 3. Accepting these facts and arguments as true, they are not material to the existence of a valid agreement, where plaintiff accepted the MVRSO and RISC through post-purchase acts, conduct, and acquiescence. Ultimately, acceptance occurred based on plaintiff's receipt of the documents combined with plaintiff's conduct showing acceptance of the benefits of the contract. Instead of pleading rescission, plaintiff includes a claim for breach of contract and presumably continues to make payments under the contract. Any factual disputes regarding what did or did not occur prior to purchase are not material. See, e.g., Okla. Gas & Elec. Co. v. Toshiba Int'l Corp., 2016 WL 3659941, *5 (W.D. Okla. July 1, 2016) (applying Oklahoma law and finding that where party had reasonable opportunity to reject contract terms but chose instead to perform under the contract, such conduct was sufficient to constitute acceptance of its terms). Thus, the Court finds that plaintiff entered into an arbitration agreement when he purchased the vehicle.

DTC asks the Court to compel arbitration of each of plaintiff's claims against it, because the parties' contract contains an explicit provision delegating questions of arbitrability to the arbitrator. Dkt. # 18, at 8-10. As a threshold question, the Court must determine whether it has the power to decide the issue of arbitrability or whether that power has been delegated to the arbitrator. See Belnap v. Iasis Healthcare, 844 F.3d 1272, 1280-81 (10th Cir. 2017). It is presumed that parties intend courts, and not arbitrators, to determine arbitrability. Brayman v. KeyPoint Gov't Sols., Inc., 83 F.4th 823, 832 (10th Cir. 2023). But because arbitration is a matter of contract, parties can agree to "delegate" arbitrability to the arbitrator. Id.; Fedor v. United Healthcare, Inc., 976 F.3d 1100,

1104 (10th Cir. 2020) (referring to such provisions as "delegation clauses"). To overcome this presumption, there must be "clear and unmistakable evidence" that the parties intended to delegate the issue. Brayman, 83 F.4th at 832. If the issue has been delegated, the Court has "no power" to decide arbitrability, "even if [it] thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." Id.

The Court finds that there is clear and unmistakable evidence that the parties intended to delegate the issue of arbitrability to the arbitrator. The arbitration provision in the MVRSO contains the following provision: "The parties also shall submit to arbitration all disputes concerning the validity, enforceability, scope, interpretation, and application of this agreement." Dkt. # 2-1, Ex. 2. The arbitration provision in the RISC further provides that:

> Any claim or dispute . . . (including the interpretation and scope of this Arbitration Provision, any allegation of waiver of rights under this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us . . . which arises out of or relates to your credit application, purchase or condition of this Vehicle, this contract or any resulting transaction or relationship . . . shall, at your or our election, be resolved by neutral, binding arbitration and not by court action.

Id. at Ex. 3. The Court finds that this language, especially in comparison to similar provisions held to constitute delegation clauses, is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. See, e.g., Dish Network, LLC v. Ray, 900 F.3d 1240, 1245 (10th Cir. 2018) (concluding that an arbitration provision stating that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement" clearly and unmistakably permitted the arbitrator to resolve issues of arbitrability) (emphasis and citations omitted)); Belnap, 844 F.3d at 1281 (holding that the parties "clearly and unmistakably agreed to arbitrate arbitrability" by incorporating a provision stating that

"[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement . . . shall be submitted and ruled on by the Arbitrator" (emphasis and citation omitted)).

Given that the parties have agreed to arbitrate arbitrability, the Court will compel arbitration unless plaintiff specifically attacks the delegation clause. See Nitro-Lift Technologies, 568 U.S. at 20-21 ("[W]hen parties commit to arbitrate contractual disputes, . . . attacks on the validity of the contract, as distinct from attacks on the validity of the arbitration clause itself, are to be resolved 'by the arbitrator in the first instance, not by a federal or state court.'" (quoting Preston v. Ferrer, 552 U.S. 346, 349 (2008)). Defendant contends that the Court should not decide plaintiff's claim of fraud, because plaintiff alleges fraudulent inducement with respect to the agreement generally. Dkt. # 18, at 13. Plaintiff responds that the undisputed facts show fraud in the inducement of the arbitration agreement. Dkt. # 23, at 8.

Section 2 of the Federal Arbitration Act established the "rule of severability," which means that an arbitration clause within a contract is "severable" from the remainder of the contract. Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 70-71 (2010); Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 447 (2006).

> "Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." Rent-A-Center, 561 U.S. at 70. For example, . . . a "claim[ ] of fraud in the inducement of [a] contract generally" cannot by itself prevent a federal court from enforcing an arbitration clause embedded therein. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 (1967). For federal courts to review such a claim, the claim must be directed at the "arbitration clause itself." Id. at 403.

Fedor, 976 F.3d at 1105. The rule of severability also applies to a delegation clause within an arbitration agreement. Id. As explained by the Tenth Circuit in Fedor:

> [D]elegation clauses are severable and are thus considered separate from the rest of the arbitration contract. Id. at 72. Therefore, if a party challenges the validity of an arbitration contract as a whole but fails to specifically challenge a delegation clause therein, then the delegation clause will typically require a court to compel arbitration and allow an arbitrator to determine whether the arbitration contract was indeed valid. Id.

Id.

Specifically, plaintiff alleges that defendant (1) "inserted [plaintiff's] signature and initials in documents while concealing the existence of the arbitration clause" and (2) "misrepresented what was being agreed to by not stating there was an agreement to arbitrate and not letting [plaintiff] read the agreement before . . . insert[ing] [plaintiff's] signatures and initials." Dkt. # 23, at 8. Defendant responds that plaintiff fails to allege that the arbitration provision was fraudulently induced because plaintiff does not contend that defendant created a false impression about the terms of the arbitration provisions such that defendant became obligated to speak. Dkt. # 26, at 3- 5.

Plaintiff's argument is premised upon a theory of constructive fraud. "Constructive fraud is a breach of either a legal or equitable duty that does not necessarily involve any moral guilt, intent to deceive, or actual dishonesty of purpose." Sutton v. David Stanley Chevrolet, Inc., 475 P.3d 847, 853 (Okla. 2020). It "may be defined as any breach of a duty which, regardless of the actor's intent, gains an advantage by misleading another to his prejudice." Id. at 854. Constructive fraud can occur where a party has a duty to speak but remains silent. Lillard v. Stockton, 267 F. Supp. 2d 1081, 1113 (N.D. Okla. 2003); Varn v. Maloney, 516 P.2d 1328, 1332 (Okla. 1973) ("[T]he concealment of material facts which one is bound under the circumstances to disclose, may constitute fraud."). Silence regarding a material fact does not, by itself, trigger the duty to speak. See Silk v. Phillips Petroleum Co., 760 P.2d 174, 179 (Okla. 1988) ("[S]ilence as to a material fact is not necessarily,

9

as a matter of law, equivalent to a false representation; there must have been an obligation to speak."). The duty to speak instead arises only "when the offending party created a false impression concerning material facts that was relied upon by the other party to his detriment and to the benefit of the offending party." Sutton, 475 P.3d at 854. Stated differently, the duty to speak "may arise from partial disclosure" only when the speaker "convey[s] a false impression by the disclosure of some facts and the concealment of others," because "such concealment is in effect a false representation that what is disclosed is the whole truth." Id. In determining whether one had a duty to speak, "consideration must be given to the situation of the parties and the matters with which they are dealing." Silk, 760 P.2d at 179.

There is no evidence suggesting that defendant created a false impression regarding the arbitration provision. Indeed, plaintiff concedes that defendant did not mention arbitration at all. See Dkt. # 2-1, at 3 ("At no time in this process did [the DTC employee] tell [plaintiff] he was signing a dispute resolution clause or giving up a right to a jury trial."); Dkt. # 23, at 8 ("DTC misrepresented what was being agreed to by not stating there was an agreement to arbitrate."). Based on defendant's alleged silence on the issue of arbitration, plaintiff was not fraudulently induced with respect to the arbitration provision. See Sutton, 475 P.3d at 858 ("The duty to disclose . . . is not a duty to read an entire contract; it is the duty to disclose enough information that will clear the false impression created, which under the circumstances, only concerned the [dispute resolution clause]."). Here, plaintiff alleges that defendant made a false impression that it would sell the vehicle at MSRP. Dkt # 2-1, at 2. However, that allegation does not specifically target the arbitration provision. No false impression regarding the arbitration provision was created, and defendant had nothing to clarify. Accordingly, the Court finds that defendant's motion to compel arbitration should be granted.

Defendant's silence regarding the arbitration provision did not trigger the duty to disclose, and plaintiff's fraudulent inducement argument fails.

### IV.

Having determined that the motion to compel arbitration should be granted, the Court turns to defendant's motion to stay proceedings pending arbitration. Section 3 of the FAA states that, upon determining that the issue involved in the suit is referable to arbitration under an arbitration agreement, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3. Accordingly, the Court finds that the motion to stay proceedings should be granted.

**IT IS THEREFORE ORDERED** that defendant's motion to compel arbitration and to stay proceedings (Dkt. # 18) is **granted**.

**IT IS FURTHER ORDERED** that, pursuant to LCvR 41.1, **this case is administratively closed** pending either an order of the Court reopening the action, or until this case is dismissed with prejudice by stipulation of the parties.

**IT IS FURTHER ORDERED** that the parties shall file a notice in this Court within 15 days of the completion of arbitration.

**DATED** this 10th day of November, 2025.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE